## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

*Charles V. Montalbano*

*8009 Hackamore Drive*

*Potomac, MD 20854*                    *

*(Full name and address of the plaintiff)*
**Plaintiff(s)**

vs.                                    *

*see attached*

_____        *

_____

_____        *

_____
*(Full name and address of the defendant(s))*
**Defendant(s)**                       *
                                  ******

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2010 AUG 13   P 1:05

CLERK'S OFFICE
AT GREENBELT

BY _____ DEPUTY

RWT 10 CV 2237

Civil No.:_____
*(Leave blank.  To be filled in by Court.)*

## COMPLAINT

1.   Jurisdiction in this case is based on:

☐   Diversity (none of the defendants are residents of the state where plaintiff is a resident)

☒   Federal question (suit is based upon a federal statute or provision of the United States Constitution)

☐   Other (explain) _____

_____

_____

2.    The facts of this case are:

Your Plaintiff was deceived and damaged by a fraudulent arbitration scheme cooked up by unscrupulous lawyers and arbitration company. There was no arbitration and the decisions were predetermined. They would then take this phony decision and have it enforced in a Court. In essence, they deceived the Court into thinking that it was adjudicating a real arbitration decision. Therein lies the RICO charge

3.    The relief I want the court to order is:

☑    Damages in the amount of: _$3,000,000_____

☐    An injunction ordering: _____

_____

☐    Other (explain) _____

_____


_Charles · Montalbane_
*(original signature of plaintiff)*

_8009 Hackamore Drive_

_Potomac, MD 20854_

_301 983 4050_

*(address of plaintiff)*


**Privacy Rules and Judicial Conference Privacy Policy**

Under the E-Government Act and Judicial Conference policy, any paper filed with the court should not contain an individual's social security number, full birth date, or home address; the full name of person known to be a minor; or a complete financial account number. These rules address the privacy concerns resulting from public access to electronic case files.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF GREENBELT, MARYLAND

**Charles V. Montalbano**
Plaintiff
vs.

**National Arbitration Forum, LLC**
**MBNA America Bank, N.A.**
**Bank of America**
**Wolpoff and Abramson, Law Firm**
**Mann Bracken, Law Firm**
**Ronald S. Canter, Esq.**
**Jennifer Anthony, Esq.**
**Harry K. Wolpoff, Esq.**
**Laurence C. Abramson, Esq.**
**Ronald M. Abramson, Esq.**

**Defendants**

**JURY TRIAL DEMANDED**

2010-cv- RWT 10 CV 2237

18 U.S.C. 1961 et. seq. (RICO)

## CIVIL COMPLAINT

**NOW COMES** your Plaintiff, **Charles V. Montalbano**, proceeding pro se and sui juris, and further being a person whose property has been injured by a pattern of racketeering engaged in by the above captioned Defendants to respectfully aver the following in support of a claim for relief.

## PARTIES

1.  The Plaintiff is **Charles V. Montalbano,** herein after Plaintiff, who resides at 8009 Hackamore Drive, Potomac, MD 20854.

2.  **National Arbitration Forum**, LLC (hereinafter **NAF**), a Minnesota entity engaged in the business of conducting arbitrations, with a business address of 6465 Wayzata Blvd., St. Louis Park, MN 55426

3.  **MBNA America Bank, N.A.**, an issuer of credit cards, is a banking entity acquired by **Bank of America** with a business address of 1100 N. King Street, Wilmington, DE 19884.  The address for Bank of America is 100 N. Tryon Street, Charlotte, NC 20282-2135.  Agent for Service:  CT Corporate Systems, 150 Fayetteville St., Box 1011, Raleigh, NC 27601

4.   **Wolpoff and Abramson**, a law firm in the business of debt collection, has been acquired by **Mann Bracken** with an address of 702 King Farm Boulevard, Rockville, MD 20850.

5.   **Ronald S. Canter, Esq.,** Attorney with **Wolpoff and Abramson,** 11300 Rockville Pike, Rockville, MD 20852.

6.   **Jennifer Anthony, Esq.,** Attorney with **Mann Bracken,** 702 King Farm Boulevard, Rockville, MD 20850.

7.   **Harry K. Wolpoff, Esq.,** 9841 Washingtonian Blvd., #410, Gaithersburg, MD 20878.

8.   **Laurence C. Abramson, Esq.,** 9841 Washington Blvd., #410, Gaithersburg, MD 20878.

9.   **Ronald M. Abramson, Esq.,** 9841 Washingtonian Blvd., #410, Gaithersburg, MD 20878.

10.   Unknown JOHN DOES and JANE DOES.  The plaintiff respectfully reserves any rights that he may have to properly amend this complaint to name additional conspirators as Defendants herein when the identities and activities become known by responsive pleadings, discovery, newly discovered evidence, etc. who are accomplices in the fraud and racketeering activity.


## II.   <u>STATEMENT OF FACTS</u>


**Black's Law Dictionary Fifth Edition:**

**Arbitration:  The reference of a dispute to an <u>impartial</u> (third) person chosen by the parties to the dispute who agree in advance to abide by the arbitrator's award issued after a hearing at which both parties have an opportunity to be heard.**

11.   The acts committed by the Defendants and their un-sued conspirators here as alleged herein were done personally by them either while present, or by the use of the mails, telephones, computers, and other instrumentalities used in interstate commerce.  **NAF** portrayed itself as an impartial arbitrator but behind the scenes it worked alongside credit card companies to get them to put unfair arbitration clauses in the fine print of their contracts and to appoint **NAF** as the arbitrator.

12.   Plaintiff alleges that **National Arbitration Forum** hid from the Plaintiff its extensive ties to the collection industry that includes the above named Defendants.  **NAF** hides from the public and therefore your Plaintiff

believes that it is financially affiliated with a New York hedge fund group that owns one of the country's major debt collection enterprises.

13.     Beginning in 2006 and through 2007, **Accretive, LLC** (a family of New York hedge funds under the control of an investment manager named J. Michael Cline and his associates), engineered two transactions.  In the first transaction, **Accretive** formed several private equity funds under the name "Agora" (meaning "Forum" in Greek), which in turn invested $42 million in the **National Arbitration Forum** and obtained governance rights in it.

14.     In the second transaction, three of the country's largest debt by Columbia, and Eskanos & Adler of California) merged into one national law firm called **Mann Bracken, LLP**.  The Forum conceals its affiliations with the collections industry through extensive affirmative representations, material omissions, and layers of complex and opaque corporate structuring.


### III. <u>FALSE PRETENSES</u>

15.     The **NAF** engaged in the following improper, deceptive and corrupt acts, including:

    a.     Establishing incentives for arbitrators to favor debt collectors over consumers;

    b.     Disregarding consumers' evidence and/or arguments;

    c.     Overlooking and violating its own Code of Procedure to benefit debt collectors, and ultimately, large creditors;

    d.     Disregarding creditors lack of evidence; and

    e.     Failing to provide the bona fide arbitration services it promised to consumers.

16.     **NAF** and **Mann Bracken** worked hand-in-hand to create the illusion of legitimacy and due process, with the purpose of luring consumers into a corrupt dispute resolution process and bilking consumers out of hundreds or thousands of dollars, including **NAF** charges and **Mann Bracken's** alleged legal fees and costs.  Despite revelation of their ruse, the conspirators, including **NAF**, **Mann Bracken** and **Accretive** have not returned the money consumers paid for the "arbitration" services they never received.

17.   Your Plaintiff did not know that---despite representing to the public that it has "no relationship with any party" and does not "counsel our users"--- the Forum works closely with creditors behind the scenes to:  (1) encourage them to file arbitration claims as an alternative way to collect debt from consumers; (2) draft arbitration clauses, advise creditors on arbitration legal trends, and in some cases, help them draft claims to be filed against consumers; and (3) refer them to debt collection law firms, which then file arbitration claims against consumers in the Forum.  In soliciting creditors to use its arbitration services, the Forum makes representations that align itself against consumers, including, for example, that "[t}he customer does not know what to expect from arbitration and is more willing to pay," that consumers "ask you to explain what arbitration is then basically hand you the money," and that "[y}ou [the creditor] have all the leverage [in arbitration] and the customer really has no choice but to take care of the account."

18.   Through their conduct the **National Arbitration Forum** and the other Defendants have violated Maryland's statutory prohibitions against consumer fraud, deceptive trade practices, and false advertising.  This pattern of behavior was the normal way of doing business for not only **NAF** but also for the other named Defendants.

19.   **D.C. 1973.** The elements of the crime of "confidence game" are (1) an intentional false representation to the victim as to some present fact, (2) knowing it to be false, (3) with intent that the victim rely on this representation, (4) the representation being made to obtain the victim's confidence and thereafter his money and property, (5) which confidence is then abused by defendant.  D.C.C.E. ~ 22-1606.  ***U.S. v Brown,*** 309 A2d 256.

20.   **Md. 1965** As an essential element of the crime of obtaining money by false pretenses, state has burden to prove that defendant made a representation of an existing fact which was false, and whether state has met burden depends on facts and circumstances of each case. ***Nicholas v State,*** 212 A.2d 291, 239 Md. 569.

21.   **Md.App. 1975.** Crime of false pretenses is committed when person, by making false representation of past or existing fact, with intent to defraud and with knowledge of its falsity, obtains any chattel, money or valuable security from another who relies on false representation to his detriment. Code 1957, art. 27, ~ 140.  ***Anderson v State,*** 331 A2d 78, 24 Md.App. 128, certiorari denied 274 Md. 275, certiorari granted in part 96 S.Ct. 36,

423 U.S. 822, 46 L.Ed.2d 39, affirmed 96 S.Ct. 2737, 427 U.S. 463, 49 L.Ed.2d 627.

## IV.   **FACTUAL BACKGROUND**

22.   This case arises pursuant to 18 U.S.C. 1961, et seq. which provides for a civil course of action for persons whose business and property are injured as a result of crimes committed by a corrupt organization.  Private civil RICO suits may be brought regardless of whether the government chooses to prosecute the criminal RICO action.   ***Sedima SPRL v Imrex,*** 473 U.S. 479, 493 (1985).  See also ***Peturelli v Spector, Cohen, Gadon & Rosen.***  779 F. 2d 160 (C.A. 3 Pa. 1985.  A merely *de minimus* effect on interstate commerce is required to meet jurisdictional elements for RICO.  ***U.S. v Fernandez,*** 388 F3d 1199 (C.A. 9 2004).

23.   This case also involves violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, which are also redress able in state court via concurrent jurisdiction.  Regardless of whether an FDCPA case is actually "time-barred, the misconduct of an unfair debt collection practices can qualify as one of the predicate acts for a racketeering action to be sustained."  Because of the fraudulent nature of the arbitration procedure the Summary Judgment against the Plaintiff should be declared as void and treble damages assessed against the Defendants under RICO.

24.   The Defendants acted in collusion to obtain these judgments.  The Bank and the **National Arbitration Forum** had an unholy alliance that they implemented through the crooked attorneys in their employ.  The Attorney General of the State of Minnesota, Lori Swanson, reached an agreement in July of 2009 wherein the **National Arbitration Forum** (**NAF**) "would get out of the business of arbitrating credit card and other consumer collection disputes".  Among the practices used by **NAF** was the hiding from the public its extensive ties to the collection industry. Attorney General Swanson in her suit alleged that **NAF** told consumers and the public that it is independent and neutral, operates like an impartial court system, and is not affiliated with and does not take sides between the parties.

25.   The lawsuit alleged that **NAF** worked behind the scenes, however, to convince credit card companies and other creditors to insert arbitration provisions in their customer agreements and then appoint **NAF** to decide the disputes.  The suit also alleged that **NAF** has financial ties to the industry. A copy of the lawsuit is **Exhibit 1** of this brief.  Everything that is alleged in this lawsuit was done to the Plaintiff.  Also appended to this

Complaint is an interrogatory answer by **MBNA America Bank, N.A**. in which it was admitted that no money was loaned.   This was signed by a Bank Officer and also by **Attorney Canter**.  Yet, **Attorney Canter** pursued the case.  When **Attorney Canter**'s firm, **Wolpoff and Abramson**, was acquired by **Mann Bracken**, **Attorney Jennifer Anthony** took charge of the case.  She also ignored the interrogatory answer and pursued the fraudulent activity.

## V.   MISCONDUCT OF DEFENDANTS

26.    The definition of white-collar crime according to the United States Department of Justice is:  "Nonviolent crime for financial gain committed by means of deception by persons whose occupational status is entrepreneurial, professional or semi-professional and utilizing special occupational skills and opportunities also, nonviolent crime for financial gain utilizing deception and committed by anyone having special technical and professional knowledge of business and government, irrespective of the person's occupation." **Bureau of Justice Statistics. Dictionary of Criminal Justice Data Technology,** page 215 (Second Edition, 1981).  See also Israel, **White Collar Crime: Law and Practice,** (West/Thompson, St. Paul, MN, 2003).  Acting with a common purpose, when one or more of these persons perform an overt act that causes legal damage, a conspiracy is completed. ***McGuire v Shubert*** 722 A 2d 1087 (1998).   In this case the Bank and its collection lawyers have communed for the common purpose of making money that supports the conspiracy and enterprise elements for RICO.  See ***United States v Johnson*** 430F3d 383 CA 6 2005.

27.    All that must be shown to establish a civil conspiracy is that there is a single plan that the alleged conspirators shared in a general conspiratorial objective and that an overt act was committed in furtherance of the conspiracy that caused injury to the Plaintiff. ***Marchese v Umstead*** 110 F. Supp. 2d 361 (E.D. Pa. 2000).

28.    Seldom is there direct evidence of an express agreement among all the conspirators, but a conspiracy can be proven by circumstantial evidence. ***Weberg v Franks*** 229 F. 3d 514 (C.A. 6 2000).  See also ***Poller v CBS*** 368 U.S. 464 (1962).  Mere agreement to participate in the conduct of the affairs of an identified enterprise through a pattern of racketeering activity is sufficient to make a RICO charge; failure to allege specific predicate acts is not fatal to the charge. ***Castro v U.S.***, 248 F. Supp. 2d 1170 (S.D. Fla. 2003).   An agreement between the Bank and the lawyers is

strongly implied from their design to arbitrarily impose an account stated format across the widely diverse cases they are pursuing, with a common purpose to abbreviate (and thus abrogate) the rights of the defendants affected.

29.   Using the account stated theory, **Wolpoff and Abramson/ Mann Bracken**, their banker accomplices and **NAF** have improperly abbreviated the litigant's right to proof of a contract.

30.   The account stated doctrine seeks to avoid the Plaintiff having to prove or disprove the existence and/or vagaries of a contract between two parties by taking a shortcut away from the facts of the case.  An account stated is an account in writing, examined and expressly or implicitly accepted by both parties.  *__Robbins v Weinstein__*, 17 A2d 629  (Pa. Super. 1941).  An account stated must be without objection or repudiation to bind the parties thereto.  *__Therwher v Rothrock,__* 105 A2d 600 (Pa. 1954).  **Montalbano** objected to the account stated, questioned it, but **Wolpoff and Abramson/ Mann Bracken** sued him anyway.  Bankers, **NAF**, third party collectors and the lawyers who serve them are ever willing to dispense with the bother of having to prove a valid contract between the alleged borrower and their client, the lender or assignee.

31.   Because it offers so many benefits in preference to the possible drudgery of proving the details of a contract the Defendants in this case use the account stated theory nearly every time, as was done in this case.

32.   **Wolpoff & Abramson/Mann Bracken**, **Attorney Ronald S. Canter** and **Attorney Jennifer Anthony** and **NAF** violated the Fair Debt Collection Act, Section 809(b) by not validating the debt before suing.

33.   RICO takes aim at racketeering activities, including acts indictable under numerous specific felony criminal provisions, including mail fraud and wire fraud.  *__Perlberger v Caplan & Luber, LLP__*, 152 F. Supp. 2d 650 (E.D. Pa. 2001).  **Wolpoff & Abramson/Mann Bracken** and **NAF** use the mails daily in their legal fraud.


## VI.   INJURY

34.   The property of **Charles V. Montalbano** has been undeniably injured within the meaning of RICO standards including the necessity of defending litigation and the reporting of erroneous information to credit bureaus and prospective employers.

35.   Injury to business and property rather than personal injury is required for RICO.  *__Fed. Insurance Company v Ayers__*, 760 F. Supp. 1118 (E.D. Pa. 1990)  This was done when the money was taken through this criminal process.

36.   **MBNA America Bank, N.A./Bank of America** and their law firms and **NAF** constitute a corrupt organization.  They have a commonality of purpose and a covert unity of command in the furtherance of their fraudulent schemes and are corrupt organizations closely associated in fact.  These Defendants have engineered their legal activities to deny those they sue their basic rights and to take advantage of an almost infinite number of poor, weak, disadvantaged, unemployed and under-employed people.  RICO was enacted to disable the Mafia from entering legitimate enterprises.  The Defendants are mobsters who chose another way to steal.

37.   That the Defendants are an association in fact is sufficiently completed where the complaint allows an inference that the alleged enterprise has sufficient structure to enable it to function independently of it predicate acts.  ***Beard v Worldwide Mortgage Corp.,*** 354 F. Supp. 2d 789 (W.D. Tennessee 2005)


## VII.   ENTERPRISE

38.   The required nexus between interstate commerce and a RICO enterprise is minimal, and circumstantial evidence of a defendant's knowledge of wrongdoing may be reasonably inferred from his status.  ***Cadle Co. v Flanagan,*** 271 F Supp. 2d 379 (D. Conn. 2003).  The relationship criterion for a RICO corrupt enterprise claim may be satisfied by showing that the criminal acts have the same or similar purposes, victims or methods of commission, or are otherwise inter-related by distinguishing characteristics and are not simply isolated events.  ***Superior Bank FSB v Tandem National Mortgage, Inc.,*** 197 F. Supp. 2d 298 (D. Md. 2000).

39.   The individuals, corporation(s) and/or proprietorships are associated in fact to constitute the enterprise for RICO purposes.  All RICO claims share three common elements: "persons" who engage in a "pattern of racketeering" which is connected to the acquisition, establishment conducts or control of a **Microsoft,** 486 F3d 541 (CA 9 Wash 2007).

40.   This complaint alleges that **Wolpoff & Abramson/Mann Bracken** and the named lawyers and **NAF** engage in a pattern of racketeering with legal entities beyond their immediate control, such as **MBNA America Bank/Bank of America**, their subsidiaries, affiliates, service companies and captive agents.  The respective enterprises of the law firm and the bank or its service companies are separate.  (2005).  See also ***River City Markets, Inc. v Fleming Foods West, Inc.,*** 960 F 2d 1458, C.A. 9 (1992)

## VIII.   THE BANK ASSISTANCE COMPANY AS ENTERPRISE

41.     A corporation can be held liable when it is actually the perpetrator or beneficiary, direct or indirect of a pattern of racketeering activity, and where it is more than a mere victim, prize or passive instrument of racketeering. *Roche v E.F. Hutton & Company*, 658,F. Supp. 315 (M.D. Pa. 1986). **MBNA America Bank**, **N.A./Bank of America** by managing and directing **Wolpoff & Abramson/Mann Bracken** and **NAF** are the main beneficiaries.

42.     RICO encompasses legal entities and associations in fact, it encompasses organizations such as corporations and partnerships but a mere association of a group of individuals may qualify as an enterprise. *Chambers Devel. Co. v Browning-Ferris Industries*, 590 F. Supp. 1528 (W.D. Pa. 1984), 18 U.S.C.A. Section 1961(4).   Limited partnerships may constitute the enterprise. *Eisenberg v Gagnon*, 564 F. Supp. 1347 (E.D. Pa. 1983).   The enterprise acknowledged must have a nexus, however minimal, to interstate or foreign commerce. **Ibid.** 18 U.S.C.A.  Section 1962 (a-d)

43.     An alleged enterprise is more than simply a group of people who get together to commit crimes, or groups of businesses operated in concert, the enterprise has structure and continuity as well as differentiation in roles for participating in it. *Carnegie v Household Intern., Inc*. 220 F.R.D. 542 (N.D. Ill. 2004).

## IX.   THE LAW FIRM(S) AS ENTERPRISE

44.     A law firm may constitute the enterprise for RICO purposes. *Park South   Associates v Fischbin*.  626 F. Supp. 1108, affirmed 800 F.2d 1128 (S.D. N.Y. 1986).   *State Farm Mutual Auto Insurance Company v Rosenfeld*, 683 F. Supp. 106 (E.D. Pa. 1988).  See also *G-I Holdings, Inc. v Baron and Budd*, 238 F. Supp. 2d 528 (S.D. N.Y. 2002). Attorneys created, operated and controlled the enterprise through a pattern of racketeering.  *In Re Prudential Sec. Ins. Ltd. Partner Lit.,* 930 F. Supp. 68 (S.D. N.Y. 1986).  Other law partners can be held liable for the racketeering acts of a partner if the other partners derived a benefit from the allegedly wrongful act.  For instance, allegations that a bank and its attorneys took control of a land developer's assets and that this income was used by defendants to fund fraudulent legal proceedings in order to whipsaw the plaintiff into submission, by overpowering him with their greater resources stated a RICO claim, 18 U.S.C.A. 1962 (a) & 1964(c).  *Crowe v Smith,* 848 F. Supp. 1258 (W.D. La. 1994).  As Professor G. Robert Blakey of Notre Dame Law School, perhaps the person most responsible for authoring the statute founding RICO was

disposed to observe, "In our complex society the accounts certificate and the lawyers opinion can be instruments for inflicting pecuniary loss more potent than the chisel or the crowbar". ***United States v Benjamin***, 328 F.2d 854, 863 (C.A. 2 1964), cert. denied, 377 U.S. 593.

45.    Individual employees of law firms who were involved in the firm's day-to-day operations could be held personally liable. ***Piper v Portnoff Law Associates,*** 274 F. Supp. 2d 681 (E.D. Pa. 2003)

46.    The debt collection activities including correspondence by a law firm sent to a property owner in an attempt to collect a delinquent municipal water assessment constituted a "communication" relating to a debt within the meaning of the Fair Debt Collection Practices Act and Consumer Credit Protection Act, section 803(2, 5) as amended, 15 U.S.C.A. section 1692a(2, 5).  See ***Piper v Portnoff  Law Associates***, 262 F. Supp. 2d 520 (E.D. Pa. 2003).

47.    Fraudulent concealment and thus spoliation of evidence, if assisted by mail and/or wire fraud, supports a RICO claim to the extent that it involves actionable fraud, obstruction of justice or tampering with witnesses, 18 U.S.C.A. section 1961(1). ***Florida Evergreen Foliage v E.I. DuPont de Nemours***, 135 F. Supp. 2d 1271 (S.D. Fla. 2001) affirmed 341 F. 3d 1292 (C.A. 11 2003).

48.    By lending itself to perverting the legal process through inadequate verifications in furtherance of a scheme to shortcut and short-circuit litigant rights to a full and fair opportunity to present the material issues, **NAF**, **Wolpoff & Abramson/Mann Bracken**, the law firm, is an enterprise that has, when managed by the lawyers herein mentioned, become an elaborately planned racketeer operation.

49.    Allegations that paralegal "fixed affidavits" by adding materials and otherwise altering statements, and various acts of fraudulent concealment sufficed as acts of mail and wire fraud to be predicates for RICO.  It was also alleged that the law firm and principals had notice of this activity. ***G-I Holdings, Inc. v Baron & Budd.*** 238 F. Supp. 2d 521 (S.D. N.Y. 2002)  See also 18 U.S.C.A. 1962(c).  It is averred that the law firm used forms and processes that were pre-signed, obviating the need for personalized attention to this lawsuit.

50.    In ***MBNA America Bank***, ***N.A. v Montalbano*** interrogatory answers that proved Montalbano's defense were given by the Defendants in this case.  Yet, they continued their assault.

51.    The structure purpose function and course of conduct of the enterprise is indeed cognizable.  The legitimate business activity of both debt collecting and lawyering has been entered by the aforenoted professionals, all of who have been educated as lawyers.  The

aforenoted collection services have become permeated with a fraudulent scheme controlled by **NAF**, **MBNA America Bank, N.A./Bank of America** and their debt collection contract lawyers **Wolpoff & Abramson** and **Mann Bracken** as the driving forces.

52. The relationship of the enterprise to interstate commerce is the sheer magnitude of credit card collection activities assisted by the private law firm/collection agencies as well as how it impacts the national economy. The enterprise substantially affects interstate commerce: ***Shearin v E.F.Hutton Group, Inc.,*** 885 F.2d 1162 (C.A. 2 Del. 1989).   To establish the interstate commerce element of a RICO offense, the plaintiff need prove a *de minimus* connection with interstate commerce, 18 U.S.C.A. section 1962(c, d). ***U.S. v Chance***, 306 F.3d 356 (C.A. 6 Ohio 2002). (Pittsburgh La Cosa Nostra).  Plaintiff under RICO not required to show more than a minimal effect on interstate commerce. ***DeFalco v Baines***, 244 F.3d 286 (C.A. 2  2001).  By the range of their business, and their mailings in support of their effort to short-circuit the rights of opposing litigants, **NAF**, **Wolpoff & Abramson/Mann Bracken** are involved in interstate commerce affecting the business and property of others within the meaning of RICO.

53. An ongoing scheme to defraud persons with false allegations that the defendants had the right to sue them was a "use of deception to induce persons to sustain injuries" within the meaning of both the Hobbs Act and RICO.  ***Calabrese v CSC Holdings, Inc.,*** 283 F. Supp 2d 797 (E.D.N.Y. 2003).  See ***DeFalco v Dirie***, 923 F. Supp. 473 (S.D.N.Y. 1996) (scheme by municipal employees to extort money in return for grant of licenses and permits).

54. A scheme by several high-ranking employees of a county board of appeals to effectuate unlawful property tax reductions by circumventing procedures can for a corrupt enterprise per this statute. ***U.S. v Burns***, 683 F.2d 1056 (C.A. 7 Ill. 1982).  See also ***U.S. v Lavin,*** 504 F. Supp. 1356 (M.D. Ill. 1981).

55. **Wolpoff & Abramson/Mann Bracken**, bankers and have systematically designed mechanisms to circumvent legal protections and have frequently falsified factual circumstances to fit their pattern of racketeering.  For instance, the usage of the account stated theory per the **Montalbano** relations with **Attorney Canter** and **Attorney Anthony**. Here the **NAF**, **Wolpoff & Abramson/Mann Bracken** lawyer racketeers provided the "necessary legal and financial advice, guidance and information" to a sufficiently identified enterprise that existed apart from their activity. ***Royal Indemnity Co. v Pepper Hamilton, LLP***, 479 F. Supp. 2d 419 (D. Del. 2007).

56.  An entity may function both as an innocent victim "enterprise" of certain racketeering while also being a perpetrator of *other racketeering activity* and thus be a "person" under the different subsection. ***Rose v Bartle***, 871 F.2d 331 (C.A. 3 Pa. 1989)  Here the entities of **NAF**, **MBNA America Bank**, **N.A./Bank of America** and the law firms of Wolpoff & Abramson/Mann Bracken have morphed into instrumentalities of the corrupt organization.

57.  The enterprise is an ongoing and coordinated affair and not merely an *ad hoc* collection of individuals who have temporarily joined forces. ***Eva v Midwest National Bank***, 143 F. Supp. 2d 862 (N.D. Ohio 2001).  The entities and subordinates of the Defendants "are all aimed at concealing, masquerading and facilitating the fraudulent scheme" as *in Z-Tel Communications, Inc. v S B C Communications, Inc.*, 331 F. Supp. 513, 561 (E.D. Tex. 2004.Burton Neil & Associates).

58.  The enterprise involving **MBNA/Bank of America**, **NAF**, **Wolpoff & Abramson/Mann Bracken** is an association of two enterprises.  This arrangement does not require any particular structure and it is not too vague or overbroad to be within the grasp of the vast remedial powers available under RICO. ***Countrywide Financial Corp. Litigation***.  601 F Supp. 2d, 1201 (2009).

59.  The evidence is compelling that **Wolpoff & Abramson/Mann Bracken**, Attorney **Ronald Canter** and **Attorney Jennifer Anthony**, as attorneys responsible for each of the specific cases assigned to them participated in the conduct and management of the enterprise, by proliferating heir frauds which constitute several predicate acts.  18 USC 1962 (c).  Every time one of them prepares a lawsuit for entry to a court somewhere, they are conducting and managing the enterprise.  The complaints enter a court system littered with their various frauds, including the fabricated or at least prefabricated verifications as well as the misleading implication that the obligations of validation per 15 U.S.C. 1692 have been fulfilled per any disputes prior to litigation.


## X.  PREDICATE ACTS CONSTITUTING FRAUD

60.  **Attorney Harry K. Wolpoff** in collusion with his partners, **Attorney Laurence Abramson** and **Attorney Ronald Abramson** supervised the law firm's collaboration with the NAF arbitration scheme that was organized to be intrinsically favoristic to bank clientele and biased against private consumers and alleged debtors, while maintaining the veneer of legitimacy.

61.  These attorneys also supervised subordinates such as Attorney Ronald Canter who implemented the scheme favoring the bank without recognizing the need to conduct proceedings within a fair forum.

62.  The schemes to defraud need only include a false statement misrepresentation or promise known to be untrue or made with reckless indifference to the truth.  Failures to disclose material information may constitute fraud actionable under RICO.  ***In Re Lupron Marketing and Sales Practices Litigation***, 295 F. Supp. 2d 148 (D. Mass. 2003); see also ***River City Market, Inc. v Foods West, Inc.,*** 960 F, 2d 1458(C.A. 9 Cal. 1992) (fraudulent misrepresentation).  Inducing one to enter into contracts or perform activities, etc. may also constitute actionable tort.  ***Lexington Ins. Co., Inc. v Forest***, (E.D. Pa. 2003) (fraudulent inducement).  See also ***Financial Trust Co., Inc. v Citibank, N.A.,*** 351 F. Supp. 2d 329 (D. Vt. 2005)

63.  The broad language of both RICO and the mail fraud statutes punishes the scheme to defraud rather than the contemplated fraud itself and is not confined to definitions of common law fraud.  ***U.S. v Dial,*** 757 F. 2d 163 (C.A. 7 1985).  It is fraud to impose an enormous loss upon someone even if the risk does not materialize.  **Dial, supra.  Wolpoff & Abramson/Mann Bracken** does this all day long ignoring demands for Validation and Verification of Debt.  15 U.S.C. 1692.

64.  The heightened pleading standard for fraud is satisfied by the plaintiff 1) identifying the maker or makers of misrepresentations, and 2) the method by which they are communicated.  ***Whitley v Taylor Bean and Whittacker Mortg, Corp.,*** 607 F Supp.2d 885 (2009).  18 U.S.C.  1341.  **Mail Fraud.**

65.  The crime of mail fraud is broad in scope and its fraudulent aspect is measured by a non-technical standard, condemning conduct which fails to conform to standards of moral uprightness, fundamental honesty and fair play.  Misrepresentations are not necessary to the offense and even routine business communications in these media (18 U.S.C. section 1341 or 1343) may suffice to make a scheme of false dealing into a Federal offense.  ***Abels v Farmer Commodities***, 259 F.3d 910 (C.A. 8 2001).  See ***Swisstock v Jones***, 884 F. 2d 755 (C.A. Pa. 1989).  ***United States v Sheeran***, 699 F.2d 1112 (C.A. 3 1983).  By use of the mails and wires questionable verifications are delivered between **NAF**, **MBNA America Bank, N.A./Bank of America** and **Wolpoff & Abramson/Mann Bracken,** and then between the lawyers and the courts.  Documents are submitted that have no original signature and usually are undated.  The verifications are boiler plated upon the suits regardless of particular realities.

66.  Mail fraud may be established by so-called innocent mailings that do not themselves contain affirmative misrepresentations.  ***Charles Well v Chase Manhattan Bank, N.A.***, 308 F. Supp. 2d 545 (D. V.I. 2004).  For

purposes of RICO liability, it is sufficient that acts of wire and mail fraud were merely in furtherance of some essential step of the scheme to defraud, it is not required that the communications themselves be fraudulent, 18 USC 1962 (c) 18 USC 1341 and 1343. *__South Atlantic Partnership of Tennessee v Riese__*. 284 F. 3d 518 (C.A. 4 NC 2002). The mailings may be wholly truthful but still comprised predicate acts being a part of a scheme to defraud. *__Lester v Percudani__*, 556 F. Supp. 2d 473 (M.D. Pa. 2008). Their systematically abbreviated pleadings produce a veritable flood of mail fraud.

67.   Even where each Defendant is charged with committing different predicate acts as part of the pattern of racketeering activity, joinder of RICO Defendants is proper where those acts constitute part of the series of actions constituting an offense. *__U.S. v Triumph Capital Graphic, Inc.,__* 260 F Supp. 2d 1132 (D. Conn. 2002).  Here the gravamen of the complaint is that the defendants contrived 1) a scheme to defraud; 2) for the purpose of depriving another of an intangible right to honest services; and 3) use of the mails in the furtherance of the scheme. *__U.S. v Triumph Capital Graphic, Inc.,__* 260 F. Supp 2d 444 (D. Conn. 2002).

68.   Action accrues on date of last predicate act, which consists of fraudulent mailing. 18 U.S.C. section 1964(c). *__Keystone Insurance Company v Houghton.__*  863 F.2d 1125 (C.A. 3 Pa. 1088).

69.   The Third Circuit has taken a liberal approach to the issue of intent and RICO allegations holding that a mail fraud allegation could be proven by evidence of a defendant's reckless disregard of the truth as well as by proof of a specific intent to defraud. *__In Re Phillips Petroleum Securities Litigation.__* 881 F.2d 1236 (C.A. 3 1989).  It is sufficient for the mailing to be incidental to the plot for purposes of the mail fraud here.  Merely knowingly causing use of mails for the purpose of executing any scheme or artifice to defraud is cognizable under 18 U.S.C. section 1341. *__Leonard Feinberg, Inc. v Central Asia Capital__*, 974 F. Supp. 822 (E.D. Pa. 1992).

70.   It is unnecessary to show evidence of an attorney's personal usage of mails.  Use of mails need only be reasonable foreseeable as part of the alleged scheme. *__1 Kuno v Yip,__* 912F. 2d 306 (C.A. 9 1990) **Wolpoff & Abramson/Mann Bracken** defrauded the mails daily.


### XI.   18 U.S.C. 1343 Wire Fraud

71.   The fraudulent administration of a program using mail, telephone, or fax to carry out misrepresentations and/or failures to disclose will supply the RICO predicate through mail and wire fraud. *__Charles Well v Chase Manhattan Bank, N.A.,__* 308 F. Supp 2d 545 (D. V.I. 2004).

72.   Fraudulent and wire transfers aiding scheme for defendants to acquire financially troubled companies and deplete their assets were acts sufficient to plead RICO.  ***DeNune v Consolidated Capital of North American, Inc.,*** 288 F. Supp. 2d 844 (N.D. Ohio 2003).  Considering the nationwide range and million-dollar scope of their business, Defendants defrauded the wires daily by fax, telephone, and Internet.

### XII.   18 U.S.C. 1344 Financial Institution Fraud

73.   Repeated submissions of false claims formed a pattern of racketeering even though actions involved a single individual defrauding a single corporate enterprise.  ***Blue Cross of Western Pa. v Nardone***, 680 F. Supp. 195 (W.D. Pa. 1988)

74.   The predicate acts of fraud need not include details of the date, time and place of the alleged fraud, but merely adequately describe the nature and subject of the alleged misrepresentations.  ***Seville Industries Match Corp. v Southern Match Corp.*** 742 F. 2d 786 (C.A. 3 1984).  ***Brossman Sales, Inc. v Broderick***, 808 F. Supp. 1209 (E.D. Pa. 1992).  See also ***Crown Cork and Seal Co. v Ascah***, 1994 U.S. Dist. LEXIS 1965 (E.D. Pa. 2/18/94).  The deceit of the Wall Street bankers that pay themselves hundreds of millions of dollars annually while collapsing the whole economy causing untold suffering worldwide is common knowledge.  The third rate debt collecting lawyers who serve them in their parasitic role is less understood by the general public, but this suit exposes their mutual fraud and the activities of **NAF**, **Wolpoff & Abramson/Mann Bracken** and the banks they serve.

75.   Reliance by the Plaintiff is not required to prove a RICO claim based upon fraud.  ***Tabas v Tabas,*** 47 F. 3d 1280 (C.A. 3 Pa. 1995).  See also ***Systems Management, Inc v Loiselle,*** 303 F.3d 100, 104 (C.A. 1 2002).  Reliance is not required for mail fraud claim.  ***Prudential Ins. Co. of America v U.S. Gypsum Co.,*** 828 F. Supp. 287 (D. N.J. 1993) and ***American Health Sys., Inc. v Visiting Nurse Ass'n of Greater Phila.,*** 1994 W. Dist. LEXIS 8843 (E.D. Pa. 1994).  See also ***Proctor & Gamble Co. v Amway Corp.,*** where despite an absence of reliance RICO claims alleging damage to property were held made based upon a competitor's alleged spreading of false rumors linking plaintiff company to Satanism and thus luring away customers by fraud, 242 F. 3d 539 (C.A. 5 2001).  ***Countrywide Financial Corp. Litigation,*** 601 F. Supp. 1201 (2009).  Reliance cannot be held to be unreasonable simply because a fraud victim may have been negligent in discovering the scheme to defraud him (and others).  ***U.S. v Zomber***, 368 F. Supp. 2d 442 (E.D. Pa. 2005*); **U.S. v Rennert***, 374 F. 3d 206 (C.A. 3 2004) and **U.S. v Coyle**, 63 F3d 1239 (C.A. 3 1995).

76.  False, deceptive or misleading speech or proposals for an illegal transaction will suffice. ***U.S. v Philip Morris, Inc.,*** 304 F. Supp. 2d 60 (D. DC. 2004). The alleged fraudulent scheme may broadly target a distinct body of public knowledge. See ***Schwab v Philip Morris USA, Inc.,*** 449 F. Supp. 2d 992 (E.D. NY 2006).  Here, **NAF**, **Wolpoff &Abramson/Mann Bracken** are intentionally scheming to distort the public record by using inadequate verifications, and by using accounts stated doctrines to obscure contracts. A RICO plaintiff is not required to prove that the defendants succeeded in their scheme to defraud. See ***U.S. v Tobacco Free Kids Action Fund,*** 477 F. Supp. 2d 191 (D.DC. 2006).

77.  For pleading purposes, the plaintiff need not attribute each individual act to an individual defendant who committed it. ***Federal Insurance Company v Ayers,*** 741 F. Supp. 1179, 760 F. Supp. 1118 (E.D. Pa. 1990). Requirement that all averments of fraud must be made with particularity is satisfied for RICO purposes when there is some precision and some measure of substantiation in pleadings. ***Carter Footwear, Inc. v Graystone World-Wide,*** 189 F.R.D. 328 (M.D. Pa. 1999). See also ***Perlberger v Kaplan and Luber,*** 152 F. 3d 650 (E.D. Pa. 2001). Fraud must plead with particularity in RICO cases, but this is not typically an insurmountable obstacle under notice pleading, where garden variety fraud will suffice. ***PetroTech, Inc. v Western Co. of North America,*** 824 F. 2d 1349 (E.D. Pa. 1991). For example, a claim will meet the particularity requirement for allegations of fraud by supplying dates of numerous occasions where false instructions were issued and by specifying facts sufficient to raise in inference of defendant's awareness of the fraudulent nature of acts. ***Sojuzvneshtrans v Buyanovski,*** 80 F. Supp. 2d 273 (D. N.J. 1999). See also ***A Pocono Country Place, Inc. v Peterson,*** 675 F. Supp. 968 (M.D. Pa. 1987).

78.  Elaborate efforts at concealment are powerful evidence of conscious wrongdoing and suggest fraud. ***U.S. v Nelson,*** 988 F. 2d 798 (C.A. 8 1993). When an allegation of fraud is based upon non-disclosure, there can be no fraud absent a duty to speak, but if one speaks, he must speak the whole truth. ***In Re Stellent, Inc. Securities Litigation.*** 326 F. Supp. 2d 970 (D. Minn. 2004).


## XIII.   PREDICATE ACTS CONSTITUTING THE PATTERN OF RACKETEERING ACTIVITY


79.  **Obstruction of Justice.** The Defendants have acted to intentionally or constructively fraudulently conceal their scheme in a Manner arguably constituting obstruction of justice. Obstruction of justice predicates were part of a consistent pattern to conceal. ***U.S. v Cannistraro,*** 800 F. Supp.

30 (D. N.J. 1992).  See also ***U.S. v Feliziani,*** 472 F. Supp. 1037, (E.D. Pa. 1979), affirmed 622 F. 2d 580 (C.A. 3 1980).  Defendants and their conspirators unsued here have improperly collaborated with each other to obstruct justice by using an account stated theory to systematically deprive litigants of their rights to contractual protections and improperly use verifications which are inadequate per se to avoid the identification of material witnesses while insulating the bank from scrutiny.  **NAF, Wolpoff & Abramson/Mann Bracken** and their entire staffs collaborate to defraud and obstruct justice and so enhance their lifestyles as they extract property from their fellow citizens.

80.   18 U.S.C. 1951.  ***Interference with Commerce by Threats or Violence (Hobbs Act).***  For purposes of the Hobbs Act, even activities that are not inherently unlawful may constitute unlawful means of obtaining property. ***U.S. v Emmons,*** 440 U.S. 396 (1973).  The element of fear required by the crime of extortion may be entirely satisfied merely by placing the person in apprehension of economic loss.  ***U.S. v Agnes,*** 753 F.2d 292 (C.A. 3 1985).  **NAF, Wolpoff & Abramson/Mann Bracken** and their entire staffs use fear of economic loss daily.

81.   A broad spectrum of legitimate business transactions may constitute wrongful means if used to obtain property to which no lawful claim exists. ***U.S. v Clemente,*** 640 F.2d 1069, 1077-1078 (C.A. 2 1981).  See also ***Deem v Lockheed Corp.,*** 749 F. Supp. 1230 (S.D. N.Y. 1989), (a client threat to exercise absolute right to terminate a relationship can constitute extortion if used to obtain property to which client has no lawful claim). See also ***U.S. v Agnes,*** 753 F.2d 292 (C.A. 3 1985) and ***U.S. v Zappola,*** 677 F.2d 264 (C.A. 2 1982).  A viable RICI claim for conducting an enterprise through a pattern of racketeering by alleging demands accompanied by threatened harms of a purely economic nature, 18 U.S.C.A. section 1951.  See ***Cobbs v Sheahan,*** 319 F. Supp. 2d 865 (N.D. Ill. 2004).  **NAF, Wolpoff & Abramson/Mann Bracken** literally steal the property of individuals through and   by the deception, fraud and loan shark activities that are explained in this suit.  They present themselves as a legitimate business while taking the law profession to an all-time low.

82.   While enterprise and pattern of racketeering are separate elements, the proof for each one need not be separate and may coalesce.  In re ***Neurontin Marketing Sales Practices Litigation,*** 433 F. Supp. 2d 72 (D. Mass. 2006).

83.   The filing of a lawsuit for the purpose of extorting property may constitute a RICO predicate.  ***Lemelson v Wang Lab, Inc.,*** 874 F. Supp. 430 (D. Mass. 1994).  ***Hall Am. Ctr. Ass'n v Dick,*** 726 F. Supp. 1083 (E.D. Mich. 1989).  The activities of the bankers and lawyers are nothing more than extortion.  Threatening their victims with lawsuits is impossible for most cardholders to defend.  Fear and coercion are used to get the money.  It is a numbers game that **NAF, Wolpoff & Abramson/Mann Bracken** play

daily.  Meanwhile, those being sued are at a great disadvantage.  They are unfamiliar with the game and though not knowing what to do are usually unable to find genuine legal help.

84.  The maintenance of fraudulent state lawsuits develops the association in fact involved in RICO, 18 U.S.C.  1962 (a).  ***St. Paul Mercury Ins. Co. v Williamson,*** 224 F. 3d 425 (C.A. 5 2000).  See also ***Lemelson v Wang Lab, Inc.,*** 874 F. Supp. 430 ( D. Mass. 1994) and **Hall Am. Ctr. Ass'n v Dick,** 726 F. Supp. 1083 (E.D. Mich. 1989).  **NAF**, **Wolpoff & Abramson/Mann Bracken** know from experience that proliferating litigation regardless of merit on account stated doctrine is profitable.  Aligned with **MBNA America Bank**, **N.A./Bank of America** their greed has no end as the continuous filing of lawsuits shows.

85.  Acts that are part of the same scheme or transaction can qualify as distinct predicate acts.  ***Penturelli v Spector, Kohen, Gadon & Rosen,*** 640 F. Supp. 868 (E.D. Pa. 1986).  RICO plaintiffs in suit against both a parent corporation and its subsidiary as a RICO enterprise allege sufficiently distinct roles of the RICO person and the RICO enterprise by alleging that the parent corporation used the subsidiary to make misrepresentations to plaintiffs constituting acts of mail and wire fraud, 18 U.S.C. 1341, 1343, 1962(c).  ***Office Outfitters, Inc. v Dick Co., Inc.,*** 83 F. Supp. 2d 702 (E.D. Tex. 2000).  According to their Certificates of Service, the RICO defendants and their conspirators unsued here appear to use the mails and wires for their communications to the Court, and this litigant as well for their intra-corporate and intra-party communications.  This conspiracy takes place by **NAF**, **Wolpoff & Abramson/Mann Bracken's** entire staff that makes them also liable.

86.  The existence of a racketeering pattern turns on a combination of factors, including the length of time over which acts are committed, the similarity of the acts and the character of the unlawful activity.  ***Sheridan v Weinberger,*** 687 F. Supp. 152 (M.D. Pa. 1987), *quoting* **Barticheck v Fidelity Union Bank**, 832 F. 2d 36 (C.A. 3 N.J. 1987).

87.  To successfully plead a civil RICO violation, a pattern of racketeering activity must be alleged.  ***Agency Holding Company v Malley-Duff Associates, Inc.,*** 483 U.S. 143 (1987) and a long-term scheme to defraud the public is a RICO matter.  ***U.S. v Philip Morris USA, Inc.,*** 321 F. Supp. 2d 72 (D.D.C. 2004).  The corrupt organization assailed here has nonetheless impacted and injured both this Plaintiff and the public.  The pattern of racketeering activity of the banks, **NAF**, **Wolpoff & Abramson/Mann Bracken** is clearly exposed in this suit and is ongoing.

88.  Conspiracy may be established by sufficient conduct on the part of participants in such an association (however loose and informal) to infer agreement.  ***In Re Managed Care Litigation***, 298 F. Supp. 2d 1259 (S.D. Fla. 2003).  A RICO case requires at least two predicate acts of

racketeering that are related and amount to or threaten the likelihood of continued criminal activity. *H.J., Inc. et al. v Northwestern Bell,* 492 U.S. 229 (1988).

89. A pattern of such activity is best shown by instances that depict the regular way of doing business by the enterprise that threatens continued RICO conduct. *Guarantee Residential Lending, Inc. v Internet Mortgage, Inc.,* 305 F. Supp. 2d 846 (N. D.Ill. 2004). Allegations hat defendants engaged in commercial bribery in violation of a Pennsylvania statute stated a predicate act for purposes of a civil RICO claim. *West Lake Plastic Company v O'Donnell,* 182 F.R.D. 165 (E.D. Pa. 1998). The high success rates of the Defendants in this case in the courts makes one wonder if the deck is stacked against the defendants and is some kind of criminal collusion taking place.

90. The inquiry is not the Manner in which states classify their criminal prohibitions but whether the particular state involved prohibits the extortionate activity charged. *U.S. v Forsythe*, 560 F. 2d 1127 (C/A/ 3 1977). For instance, 18 U.S.C. Section 1952 includes all crimes within generic designation of extortion. *Perrin v United States,* 444 U.S. 37 (1979). See also *Overnight Transp. v Intern. Brotherhood of Teamsters,* 168 F. Supp. 2d 826 (W.D. Ten. 2001).

91. *In Fort Wayne Books, Inc. v Indiana,* 489 U.S. 46 (1989), Justice Stevens, joined by Brennan and Marshall, JJ., dissenting, observed that,

"*Ironically, the legal test for determining the existence of a pattern of racketeering activity has been likened to 'Justice (Potter) Stewart's famous test for obscenity –* **I know it when I see it**' *– set forth in his concurrence in Jacolellis v Ohio, 378 U.S. 184, 197 (1964).' "*

## XIV.   RELATEDNESS AND CONTINUITY

92. Relatedness and continuity among predicate acts is both a closed and open ended concept, referring to either the closing period of repeated conduct or to the particular conduct that by its nature projects into the future, 18 U.S.C. 1961 (5). *Seneca Insurance Company v Commercial Transport, Inc.,* 906 F. Supp. 23 (M.D. Pa. 1995). At least two related predicate acts that amount to or threaten continued criminal activities would prove a pattern of racketeering. *Schroeder v Acceleration Life Ins. Co.,* 972 F. 2d 41 (C.A. 3 Pa. 1992). Racketeering acts are related if they have similar purposes, results, participants or victims or methods of commission and are inter-related by distinguishing characteristics and not isolated events. *Tyler v O'Neill,* 994 F. Supp. 603 (E.D. Pa. 1998). See

*Smithfield Foods, Inc. v United Food and Commercial Workers International Union* 586 F. 2d 632 (E.D. Va. 2008). **NAF, Wolpoff & Abramson/Mann Bracken's** RICO activities were ongoing, related, and continuous on a daily basis,

93. Different criminal **episodes separated in time and place** yet still sufficiently **related by purpose** may show continuity for RICO. *Perfection Corp. v Dresser Industries, Inc.,* 586 F. Supp. 782 (W.D. Pa. 1986).  Here the bankers and their lawyers are governed by a corrupt determination to use economic logic rather than legal logic to profiteer from cases, drawn from the cardholder base, continuing to do so as long as the law of diminishing returns allows them to win cases with relative ease.  In the instant matter the account stated doctrine was cited to "cookie cut" out a lawsuit unfettered by contract law considerations and filed after being safely verified by a non-plaintiff employee contracted to rubberstamp verification.  These acts are related and because they qualify as predicate acts.  For an example of predicate acts which constitute attempted extortion, see *Trevino v Pechero* 592 F. Supp. 2d 939 (SD Tex 2008).

94. The party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time or by demonstrating that a threat of continued criminal activity exists. *Stewart v Associates Consumer Discount Company,* 15 F. Supp. 2d 469 (E.D. Pa. 1998).  Sufficient specificity (dates, names or places, etc.) of the details of transactions alleged to be related predicates will constitute a pattern of activity that satisfies the pleading requirements of RICO. *Gintowt v TL Ventures,* 239 F. Supp. 580 (E.D. Pa. 2001).

95. Threatened future criminal activity for RICO purposes may be shown by demonstrating that predicate acts or offenses are part of an ongoing entity's regular way of doing business. *Greenberg v Tomlin,* 816 F. Supp. 1039 (E.D. Pa. 1993).  See *Bivins Garden Office Bldg. v Barnett Bank,* 906 F. 2d 1546 ( C.A. 11 1990) (where fraudulent acts are related and threaten to continue fraud).  See *HT of highlands Ranch, Inc. v Hollywood Tanning Systems, Inc.* 590 F. Supp. 2d 677 ( DNJ 2008) (used deceptive agreement documents).  See also *RWB Services LLC v Hartford Computer Corp.* 539 F. 3d 681 (CA Ill 2008)

96. Conduct that is open ended in nature satisfies the continuity requirement. *A. Terzi Prod., Inc. v Theatrical Protect. Union,* 2 F. Supp. 2d 485, 504, 507 (S.D. N.Y. 1998).  An open-ended pattern suggests a continuing threat. *OS Recovery v One Groupe Intern. Inc.,* 354 F. Supp. 2d 357 (S.D.NY 2005). **NAF, Wolpoff & Abramson/Mann Bracken, MBNA America Bank**, **N.A.**/**Bank of America** activity is open-ended in nature and satisfies the continuity requirement.

## XV.   RICO CONSPIRACY

97.   A RICO conspiracy involves two agreements; one to conduct an enterprise, and two, to commit the predicate acts.  Both agreements may be inferred.  ***Eva v Midwest National Mortgage Bank.***  143 F. Supp. 2d 862 (N.D. Ohio 2001).  An agreement to circumvent government regulations passes RICO muster even if defendants claim that alleged conspiratorial enterprise could not be comprised of entities that were not all in existence when conspiracy began. ***U.S. V Salvagno,*** 306 F. Supp. 2d 28 (N.D. N.Y. 2004).

98.   The intracorporate conspiracy doctrine does not disqualify or otherwise defeat a claim of RICO, ***Kirwin v Price Communications,*** 391 F. 3d 1323 (C.A. 11 2004)

99.   A civil conspiracy alleges a common scheme to defraud.  ***Stitt v Philip Morris, Inc.,*** 245 F. Supp. 2d 686 (W.D. Pa. 2002).  A party can be found liable for conspiracy to violate RICO statute if the defendant **agrees** to the commission of predicate acts even if the defendant does **not** personally commit the predicate acts.  18 U.S.C.A. 1962 (c, d).  ***Fidelity Federal Saving & Loan Ass'n v Felicetti,*** 830 F. Supp. 257 (E.D. Pa. 1993).  An unlawful conspiracy to deceive the public is actionable under RICO.  ***U.S. v Philip Morris, Inc.,*** 263 F. Supp. 2d 72 (D. D.C. 2003).  See also ***Piper v American Nat. Life Ins. Co. of Texas,*** 228 F. Supp. 2d 553 N.D. Pa. 2002.  Here the actors have demonstrated a common purpose, i.e., a conspiracy to ruin your plaintiff's property, business and reputation.  See ***Kline v Security Guards, Inc.,*** 386 F3d 246 (C.A. 3Pa. 2004).

100.   Circumstantial evidence alone can nonetheless be very strong and sufficient, such as when Henry David Thoreau observed one finds "a trout in the milk".  Where "The proof is largely in the hands of the conspirators", ***Potter v Columbia Broadcasting System, Inc.,*** 368 U.S. 464, 473 (1962), circumstantial evidence alone is adequate if only because of the self concealing nature of conspiracy.  The lawyers of **Wolpoff & Abramson/Mann Bracken**, **NAF**, **MBNA of America Bank, N.A./Bank of America** "facilitated", "approved", "condones", and/or "deliberately ignored" the offensive practices so as to be liable.  ***Anderson v Cornejo,*** 284 F. Supp. 2d 1008 (N.D. Ill. 2003).  A conspiracy of officials to deprive a person of due process may state a claim.  ***Bergstrom v McSweeny,*** 294 F. Supp. 2d 961 (N. D. Ill. 2003).  See also ***Limone v U.S.,*** 271 f. Supp. 2d 345 (D. Mass. 2003).  The Conspiracy can be shown by inference.   See In Re ***Pressure Sensitive***

*Labelstock Litigation* 356. F. Supp. 2d 484 (M.D. Pa. 2005).  See also *Walker v North Wales Borough,* 395 F. Supp. 2d 219 (E.D. Pa. 2005).

101.   To state a conspiracy claim, the complainant needs not anticipate every defense nor plead every response to a potential defense.  *Memphis American Postal, AFL-CIO v Memphis,* 361 F. 3d 898 (C.A. 6 2004).  A conspiracy is actionable when some overt act is done in pursuance of a common purpose or design and actionable legal damage results.  *Baker v Rangos,* 324 A. 2d 498 (Pa. Super. 1974).  Overt acts, which have implemented conspiratorial objectives, include the circulation of false and misleading information over the mail and wire reports capable of defamatory meaning.  *Smith v Wagner,* 588 A.2d 1308 (Pa. Super. 1991).

102.   *Respondeat superior* liability may accrue to a corporate RICO defendant even where said defendant is initially unaware of RICO violations, where violations were incident to duties of a high level participant.  *Quick v Peoples Bank of Cullman County,* 993 F 2d 793 C.A. 11 (1993).

103.   The particular requirements of pleadings are relaxed and it is sufficient for a Plaintiff to merely identify the parties, the general purpose and the approximate time of the conspiracy alleged.  *Hoskins v Poestra,* 320 F. 3d 761 (C.A. 7 2003).  See also *Marchese v Umstead,* 110 F. Supp. 2d 361 (E.D. Pa. 2001).  In order to show a conspiracy, one is not necessarily required to show that each defendant knew all the details, goals or all of the other participants.  *U.S. v Lee,* 359 F. 3d 194 (C.A. 3 N.J. 2004).  See also *Estate of Morris ex rel Morris v Dapolito,* 297 F. Supp. 2d 680 (S.D.N.Y. 2004).  It is sufficiently pleaded by simply identifying the time, place, conduct and persons responsible for same. *Boykins v Ambridge Area School District,* 621 F. 2d 75 (C.A. 3 1980).

104.   Here your claimant is complaining of a nationwide effort by the **MBNA America Bank N.A./Bank of America** corrupt organization to improperly abbreviate the processes due for valid judgments to be reached against allegedly delinquent cardholders.  This effort has been most virulently noticeable in the past decade with the adoption of account stated doctrine theories by law firms such as **MBNA America Bank, N.A./Bank of America**'s contract counsel, **Wolpoff & Abramson/Mann Bracken**. Along with this trend, MBNA **Bank of America, N.A./Bank of America** has assisted the law firms litigating for them with "human rubber stamps" to verify their documents regardless of any value that the human rubber stamp would have as a material witness.


## XVI.   FAIR DEBT COLLECTION PRACTICES ACT

105.   The foregoing acts and omissions of the Defendants as further describes within this complaint constitute violations of the FDCPA, including but not limited to each and every of the above cited provisions of the FDCPA, 15 USC sec. 1692 et seq.

106.   The acts of the Defendants particularly **Attorney Ronald Canter** and **Attorney Jennifer Anthony** were intentionally deceptive or otherwise performed with a reckless disregard to deceive and defraud both persons similarly situated to your Plaintiff, **Charles V. Montalbano**, as well as to deceive and defraud courts of law such as the present tribunal.

107.   The acts and inaction of the Defendants earlier described were intentionally contrived to harass and intimidate persons similarly situated to **Montalbano** or performed with a reckless disregard for their propensity to accomplish the same result.

108.   Lawyers acting on behalf of **MBNA America Bank, N.A./Bank of America** as well as the bank itself routinely minimize or evade substantial compliance with their duty to substantiate the debts that they allege and as third party collectors, the lawyers pay only token regard for an obligation to validate the debt upon demand. 15 USC 1692g, i.

109.   By prematurely commencing lawsuits rather than substantially complying with their validation requirements as imposed by the Fait Debt Collection Practices Act (FDCPA), the conspirators here compound their financial oppression of persons such as your claimant by multiplying legal fees. ***Duffy v Landberg*** 215 F3d 871 (C.A. 8 2000).  See also 15 USC 1692g, i.

110.   Where the debt collector has reason to know there are facts to make the action unlikely in the particular case, the debt collector has an obligation to avoid false and misleading correspondence. ***Brown v Card Service Center*** 464 F 3d 450 (CA 3 2006).

111.   By using the rubber stamp, boilerplate verifications, the defendants attempted to create a false impression as to the source, authorization or approval of the complaint and other pleadings filed for **MBNA America Bank, N.A./Bank of America** by **Wolpoff & Abramson/Mann Bracken** law firms.  See 15 USC 1692e (9).

112.   Defendant's acts or omissions specifically violate 15 USC 1692e(2), 1692e(8) and 1692f(1) in that they have misrepresented the age, nature, balance or other information concerning the account to third parties.

113.   As a result of Defendant's violation of the FDCPA, Plaintiff has suffered out of pocket expenses as well as other damages and is therefore entitled to an award of actual damages pursuant to USC 1692k (a)(1). Statutory damages in the amount up to $1,000 pursuant to 15 USC 1692k(a)(2)(A) for each violation committed of the Fair Debt Collection Practices Act and for reasonable costs pursuant to 15 USC 1692k (a)(3).

23

114. Susceptible to an inaccurate reading of the required message.  See **_DeSantis v Computer Credit, Inc.,_** 269 F3d 159 (2d Cir. 2001).

115. A debt collection notice is overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain a to her rights. **_Savino v Computer Credit, Inc.,_** 164 F3d 81 (2d Cir. 1998).

116. When determining whether [the FDCPA] has been violated, an objective standard, measured by how the "least sophisticated consumer" would interpret the notice received from the debt collector, is applied. **_Russell v Equifax A.R.S.,_** 74 F 3d 30, 34 (2d Cir. 1996) (applying least sophisticated consumer standard to sec. 1692g); see also **_Clomon v Jackson_**, 988 F 2d at 1314 (2d Cir. 1993)

117. The least sophisticated consumer standard is designed to serve a "dual purpose: it (1) ensures the protection of all consumers, even the naïve and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." **_Clomon,_**  998 F 2d at 1320.

118. A single violation of any of these provisions "is sufficient to establish civil liability under the FDCPA." See **_Ellis v Solomon and Solomon,  P.C_**. Civ. No. 3:05 cv 1623 (JBA) (USD Ct. Conn. 2/23/2009), quoting. **_Clomon v Jackson_**, 988 F 2d 1314, 1318 (2d Cir. 1993); sec. 1692k.


## XVII.   FRAUD

119. A pattern of racketeering may be proven even when only one fraudulent scheme exists. **_Hill v Equitable Bank,_** 655 F. Supp. 631 (D Del 1987).

120. Violating a duty to disclose material facts constitutes fraud. **_DenTal-ez, Inc v Siemens Capital Corp.,_** 566  A2d 1214 (Pa. Super 1989).  Acting through **Attorneys Canter and Anthony**, **Wolpoff & Abramson/Mann Bracken** purposefully and fraudulently violated a duty to disclose the material fact that **Montalbano** was contesting the demanded amount, putting it into dispute.  **Attorneys Canter and Anthony** and the other lawyers commenced suit using the account stated theory that they realized was inapplicable due to earlier contacts with **Montalbano**. These acts of negligent misrepresentation followed by intentional misrepresentation generate a climate of pervasive fraud.  Reliance by the victim is not required to state a claim of fraudulent misrepresentation in the RICO contest.  See **_Bridge v Phoenix Bond & Indemnity Co.,_** 553 U.S._____(2008).

24

121.   Fraudulent billing practices may generate direct injuries cognizable by RICO. ***Allstate Ins. Co. Litigation***, 312 F. Supp. 2d 260 (D. Conn. 2004).  See also ***Florida Attorney General v Tenet Health Court***, 420 F. Supp. 2d 1288 (S.D. Fla. 2005).

## XVIII. DAMAGES

122.   Punitive damages as well as treble damages can be awarded for fraudulent billing practices, such as those described herein. ***Kemp v AT&T*** 393 F3d 1354 (CA 1 2004).  See also ***Neibel v Transworld Assurance Co.,*** 108 F3d 1123 (CA).

123.   Your claimant has been oppressed by the threat of bankruptcy, loss of house, and invasion of privacy as contemplated by the Congressional authors of the Fair Debt Collection Practices Act. See ***Brown v Card Service Center*** 464 F. 3d 450 (CA 3 1987).

124.   A nominal amount of damages is adequate to support liability under a RICO civil action. ***Potomac Elec. Power v Electric Motor and Supply,*** 262 F3d 260 (C.A. 4 Md. 2001).

125.   The RICO statute provides for treble recovery of compensatory damages to the prevailing plaintiff.  The RICO treble damages provision represents a policy choice premised upon recognition of the impracticality of asserting liability based on the almost infinite expanse of actions that are in some sense causally related to an injury. ***Commercial Cleaning Serv. V Colin Service Systems,*** 271 F. 3d 374 (C.A. 2 Conn. 2001).  Claim for punitive damages for other causes of actions in RICO complaint need not be dismissed where they independently state a claim for which relief can be granted. ***Kranzdorf v Green,*** 582 F. Supp. 335 (E.D. Pa. 1983).

126.   While damages must be founded upon a reasonably factual basis rather than conjecture, damages need not be calculated with complete accuracy. ***Lessoon v Metropolitan Life Insurance Co.,*** 898 A 2d 620 (Pa. Supr. 2006).

127.   Compensatory damages from injury to the Plaintiff's property interests and business interests from the RICO activity are calculated and pleaded as follows:  per treble damages to approximately Three Hundred Thousand Dollars, which represents three times the amount of the fraudulent judgment obtained from the spurious arbitration proceedings that became enforceable when a summary judgment was declared for $95, 020.07 in the Circuit Court of Montgomery County, Maryland.

128. Your Plaintiff's insurance business was damaged by the necessary preoccupation with the Defendant's threats, generating expenses of at least $160,000.00.

129. Your Plaintiff paid $3,000.00 for legal services and owes $9,000.00 for appellate legal work unpaid.

129. The cost of litigation for researching, word processing, duplicating, mailing, filing and serving this lawsuit are about $4,285.

128. Your Plaintiff further requests punitive damages for $3 Million which represent acknowledgement of the outrageous conduct of Defendants in perpetrating a fraud on the court by covertly rigged arbitration proceedings.

## XIX.   LEAVE TO AMEND FOR DISCOVERY

130. Allegations must include **a person**, an enterprise, and a **pattern of racketeering** activity, which are pleaded separately within a complaint that needs only to provide a general outline of the alleged fraudulent scheme.  Leave to amend should be granted when a complaint is not adequately pleaded but remains possible to do so.  ***Wagner v Magellan Health Service, Inc.,*** 121 F. Supp. 2d 673 (M.D. Ill. 2000).  See also ***Valdes v QuestComm Intern., Inc.,*** 147 F. Supp. 2d 116 enterprise is a practice sustained by the Third Circuit.  ***United States v Local 560,*** 780 F. 2d 267 (C.A. 3 1985).

131. If necessary, a more definite statement can be provided to ascertain mail fraud details if allegations of same are found to be conclusive.  ***New England Data Servs., Inc. v Becher,*** 829 F. 2d 286, 292 (C.A. 1 1987).  Leave to amend RICO should be liberally granted.  ***Yellow Bus Lines, Inc. v Local Union 639,*** 883 F. 2d 132 (D.C. Cir. 1989; ***Schiffels v Kemper Financial Services, Inc.,*** 978 F. 2d 344 (C.A. 7 1992).  ***Elliot v Foufas,*** 867 F. 2d 877 (C.A. 5 1989).  A dismissal should be made ***Partners, Inc. v Rockman,*** 274 F. Supp. 2d 693 (E.D. Pa. 2003).

## XX.   EXHIBITS

**Exhibit A**   Lawsuit of State of Minnesota Attorney General

**Exhibit B**   Class Action Suit in U.S. District Court, Central District of CA, #CV09-6375

**Exhibit C**   Article from BUSINESS WEEK magazine.

**Exhibit D**   MBNA Interrogatory Answers.

**WHEREFORE,** your Plaintiff respectfully requests that this Honorable Court **GRANT** judgment for the Plaintiff including compensatory damages against the Defendants, and treble damages against the same, and punitive damages for the intentionally committed course of conduct against **Montalbano**, and for the costs and expenses of researching, writing, duplicating, and filing the underlying litigation and further fashion any other appropriate remedies against the Defendants as are available from the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. sec. 1961 et. Seq. as well as recourse from the Federal Debt Collection Practices Act 15 USC section 1692, and any other appropriate federal   or state statutory, common law or inherent authority available to this Court.  Total Demanded $3,462,305.07.  **JURY TRIAL DEMANDED.**

## VERIFICATION

I hereby verify that the statements of fact and belief represented above are true and correct to the best of my knowledge, information and belief, these statements being made subject to the criminal penalties for making false statements to Grand Jury or Court, or for perjury, as contained within the federal criminal code Title 18 U.S.C. 1623, 1674, et seq.

Respectfully submitted:

*Charles V. Montalbano*          *August 13, 2010*

Charles V. Montalbano

_____

Charles V. Montalbano
8009 Hackamore Drive
Potomac, MD  20854
301-983-4050

27

Material facts about **NAF**'s relationships with parties to be named in this complaint. A statement or omission is considered "material" as used in paragraph (3) of this section, if a significant number of unsophisticated consumers would attach importance to the information in determining a course of action. **Hayes v Hanbruch,** 841 F. Supp. 706 (D. Md. 1994), aff'd, 64 F.3d 657 (4th Cir. 1995).


**Hoffman v Stamper,** 155 Md. App. 247, 843 A2d 153 (2004). **D.Md. 1976.** Primary element which distinguishes crime of larceny from crime of obtaining property by false pretenses is element of trespassory taking. 18 U.S.C.A. ~2113(b).
    U.S. v Posner, 408 F.Supp. 1145, affirmed 551 F.2d 310, certiorari denied 98 S.Ct. 127, 434 U.S. 837, 54 L.Ed.2d 99, rehearing denied 98 S.Ct. 494, 434 U.S. 960, 54 L.Ed.2d 321.


**D.C. App. 1967.** Finding of knowledge of falsity may be based on reasonable inferences from concrete facts in evidence, including conduct of parties to transaction, their utterances, and the position occupied by accused, and all circumstances surrounding the transaction. **D.C. Code 1961, ~22-1301.** ***Willgoos v U.S.***, **228 A.2d 635.**

28